## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NOAH A. SAIN and MARILYN SAIN,

      Plaintiffs,

vs.                                             No. CIV 05-0180 RB/RHS

EOG RESOURCES, INC., a Delaware
Corporation, and SST ENERGY
CORPORATION, a Colorado Corporation,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant SST Corporation's (SST's) Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction and Improper Venue (Doc. 25), filed on April 8, 2005, and Plaintiffs' ("the Sains'") Motion to Amend Complaint (Doc. 71), filed on August 1, 2005. Jurisdiction is founded upon 28 U.S.C. § 1332. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, the Court finds that the motion to amend the complaint should be denied as futile and that this matter should be dismissed for lack of subject matter jurisdiction.

## I.    Background.

In their Complaint for Damages Arising from Personal Injury, the Sains allege that they are citizens and residents of Wyoming. (Compl. ¶ 1.) EOG Resources, Inc. ("EOG") is a Delaware corporation authorized to conduct and conducting business in New Mexico. (Compl. ¶ 2.) SST Energy Corporation ("SST") is a Colorado corporation and was authorized to conduct and conducted business in New Mexico. (Compl. ¶ 4.)

EOG acquired a federal lease and state permit to the oil and gas located under real property in Moffat County, Colorado.  (Compl. ¶ 8.)  EOG entered into a contract with SST to drill a well and place a rig at the well site.  (Compl. ¶ 9.)  EOG and/or SST hired M-I, L.L.C., d/b/a SWACO ("SWACO") to maintain and operate the well site and rig.  (Compl. ¶ 10.)  Noah Sain was employed by SWACO as a field maintenance operator.  (*Id*.)

On October 16, 2002, Noah Sain was setting a centrifuge when part of the rig collapsed, causing him to fall into a mud pit.  (Compl. ¶14.)  As a result, Noah Sain sustained severe and permanent physical and psychological injuries.  (*Id*.)

SST argues that this matter should be dismissed for lack of federal subject matter jurisdiction, lack of personal jurisdiction and improper venue. It is undisputed that EOG is a Delaware corporation with its principal place of business in Texas.  Thus, EOG is a citizen of both Delaware and Texas. It is undisputed that SST is a Colorado corporation.  The parties disagree as to the location of SST's principal place of business.  SST asserts that its principal place of business is in Wyoming.  If its principal place of business is in Wyoming, then diversity is not complete because the Sains are citizens of Wyoming.  The Sains argue that SST's principal place of business is in Colorado.

The Sains seek to amend Paragraphs 3 and 4 of the Complaint to add allegations that EOG has its principal place of business in Texas, that SST has its principal place of business in Colorado, and to add more specific allegations regarding SST's minimum contacts with New Mexico. (Pl.'s Mot. and Mem. for Leave to File First Am. Compl. for Damages Arising from Personal Injury at 2.)

## II.  Standard.

The Sains bear the burden of proving facts supporting diversity jurisdiction.  *Amoco*

*Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 914 (10th Cir. 1993).  The court of appeals reviews the district court's determination under the clearly erroneous standard.  *Id.*

## III.  Facts.

SST was incorporated in Colorado in 1989.  (Pl. Ex. A.)  Render Holdings Incorporated owns SST.  (*Id.*)  The parent company of Render Holdings is Lien Hwa, a Taiwan corporation.  (*Id.*)  Paul Miao, President of SST,  lives in Taiwan.  (Def. Ex. M.)  James Pan, the Vice President, lives in Casper, Wyoming.  (Def. Ex. A.)

SST provides drilling equipment and operations crews to owners/operators of oil and gas wells.  (Def. Ex. A.)  SST has offices in Casper, Wyoming and Denver, Colorado, and primarily provides equipment and employees for work in Colorado, Utah, and Wyoming.  (*Id.*)  While SST equipment is utilized in states other than Wyoming, all requests for equipment are processed by the Wyoming office.  (*Id.*)  In general, the equipment is transported from the Wyoming office to a particular job.  (*Id.*)

SST owns twelve rigs, valued between five and fifteen million dollars each.  (*Id.*)  The location of the rigs varies according to the location of the customers' wells.  (Pl. Ex. A.)  In 2004, SST had five rigs in Wyoming, five rigs in Colorado, and two rigs in Utah.  (*Id.*)  Each rig requires four five-member crews of SST employees per month.  (Pl. Ex. A.)

SST has approximately 290 employees.  (Def. Ex. L.)  Between 22 and 34 employees are located in the Wyoming office; one is located in the Colorado office; the rest work on the rigs.  (Pl. Exs. A and G; Def. Exs. A and L.)  SST's management is based in the Wyoming office, including Vice President, James Pan, Safety Director Bert Eldredge, Operations Manager Peter Toup, and

Accounting Manager Bill Grosenheider.  (*Id.*)  The Wyoming office includes six employees in the accounting department, seven employees in the operations department, and eleven employees in the rig maintenance shop.  (*Id.*)

Mr. Eldredge inspects SST rigs on a monthly basis.  (Pl. Ex. D.)  When the rigs are located in Colorado, Mr. Eldredge drives to Colorado to perform safety inspections.  (*Id.*)  Mr. Eldredge has traveled to Colorado to testify in two workers compensations case and one criminal matter involving SST employees.  (*Id.*)  During the last five years, most of SST's rigs were located in Wyoming.  (*Id.*)

All income generated from the use of SST rig crews and equipment is remitted to the Wyoming office.  (Pl. Ex. A.)  SST files an asset report only in Wyoming.  (Def. Ex. L.)  SST's real property, consisting of the office building, yard, and maintenance shop, is located in Wyoming.  (Pl. Ex. A.)  Contracts are processed through the Colorado office and the Wyoming office.  (*Id.*)  The contracts are approved by Mr. Pan.  (*Id.*)  The payroll is generated out of the Wyoming office.  (*Id.*)  Mr. Miao holds the board of director meetings at the Wyoming office.  (*Id.*)  Employees of SST refer to the Wyoming office as the company "headquarters."  (Pl. Ex. A.)

The Colorado office is staffed by the marketing manager, who drives a company car.  (Pl. Ex. A; Def. Ex. L.)  The marketing manager negotiates contracts with operators.  (*Id.*)  The Colorado office is a leased suite consisting of a couple of rooms.  (*Id.*)  SST holds monthly management meetings.  (Pl. Ex. E; Def. Ex. M.)  Most of the monthly management meetings are held at the Wyoming office.  (*Id.*)  However, three or four times a year, the monthly management meetings are held in the Colorado office.  (*Id.*)  Some of the managers do not attend the meetings in the Colorado office.  (*Id.*)  A Colorado law firm handled SST's 1989 incorporation.  (Pl. Ex. A.)  SST purchases insurance through a Denver broker.  (*Id.*)  SST carries workers compensation coverage in Wyoming,

Colorado, and Utah. (Pl. Ex. G.)

James Wildeman was the sole  employee in the Colorado office.  (Pl. Ex. C.)  Mr. Wildeman is primary liaison between SST's headquarters in Wyoming and its customers in Denver.  (*Id*.)  A large majority of the companies that contract with SST have offices in Denver and these companies prefer to have a local contact.  (*Id*.)  EOG is one of the companies that prefers to have a Denver contact for SST.  (*Id*.)  Mr. Wildeman negotiates leases for SST out of his Denver office.  (*Id*.)  Mr. Wildeman travels to the Wyoming office for monthly meetings.  (*Id*.)

The International Association of Drilling Contractors Membership Directory, for the years 2001-2005, lists the Wyoming address directly under the heading for SST.  (Weisman Aff. Ex. A.) The types of equipment and the names of the president, managing director, operations manager, comptroller, superintendent, shop foreman, chief mechanic, and safety supervisor are listed under the Wyoming address.  (*Id*.)  The Colorado address is listed separately, along with the name of the contracts manager and, in the 2002-2004 listings, a marketing assistant.  (*Id*.)  For 2005, only the marketing assistant is listed under the Colorado address.  (*Id*.)

On April 12, 2002, SST filed an application for certificate of authority with the New Mexico Secretary of State.  (Pl. Ex. F.)  SST stated that it was incorporated in Colorado and that the street address of its registered office in its state of incorporation was the address of its Colorado office. (*Id*.) On the same numbered question, in a separate blank, the form asked for the address of the principal office, if different from its address in the state of incorporation.  (*Id*.)  SST responded "same." (*Id*.) The form asked for the names and addresses of the officers and directors.  (*Id*.)  SST listed President Paul Miao and Vice President James Pan with the Wyoming office address, and Secretary Y.S. Miao with a Taipei address.  (*Id*.)

In an unrelated personal injury action filed against SST in Colorado state court, the plaintiff alleged that SST had its principal place of business in Colorado.  (Request to Take Judicial Notice, Ex. A.)  SST admitted this allegation in its answer.  (Request to Take Judicial Notice, Ex. B.)  In a motion to change venue filed in the Colorado state case, SST requested a transfer of venue from Denver to Garfield County or Mesa County because all of SST's Colorado drilling operations are based in western Colorado.

## IV. Discussion.

The district courts of the United States are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute"  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, ___ U.S. ____,125 S.Ct. 2611, 2616 (2005).  In this case, jurisdiction rests solely on the diversity statute, 28 U.S.C. §1332.  This statute provides that  federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000.00 (exclusive of interest and costs) in controversy exists.  28 U.S.C. §1332.

Since its enactment, the Supreme Court has interpreted the diversity statute to require "complete diversity" of citizenship.  *Carden v. Arkoma Associates*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806)).  As interpreted, the statute provides federal district courts with original diversity jurisdiction of cases "only if there is no plaintiff and no defendant who are citizens of the same State."  *Gadlin v. Sybron Intern. Corp.*, 222 F.3d 797, 799 (10th Cir. 2000).  Subject matter jurisdiction should be determined as a prerequisite to consideration of personal jurisdiction or the merits.  *Id*.

For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any

State by which it has been incorporated and of the State where it has its principal place of business."
28 U.S.C. § 1332(c)(1).  The statute plainly contemplates that a corporation can have only a single
principal place of business.  *Barnes v. Farmland Nat. Beef Packing Co. L.P.*, 169 F.Supp.2d 1235,
1238 (D. Kan. 2001).  The relevant portion of the statute was enacted in 1958 in order to reduce the
workload of federal courts.   13B CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND
PROCEDURE § 3625 at pp. 618-25 (2d ed.1984).  In many cases, the determination of the principal
place of business has not been simple.  *Id.*  Over the years, courts have developed approaches such
as the "nerve center test" and the "production or service activities test." *Id.*  These approaches may
be viewed as particular applications of the general rule that the bulk of corporate activity, as
evidenced by the daily operating and management activities, governs the choice of the principal place
of business.  *Id.*

Consistent with this general rule, the Tenth Circuit has adopted the "total activity" approach
to the principal place of business determination.  *Shell Rocky Mountain Production v. Ultra
Resources, Inc.*, 415 F.3d 1158, 1162 (10th Cir. 2005) (citing *Amoco Rocmount Co. v. Anschutz
Corp.*, 7 F.3d 909, 914 (10th Cir. 1993)).  The total activity analysis "considers a variety of factors,
such as the location of the corporation's nerve center, administrative offices, production facilities,
employees, etc., and it balances these factors in light of the facts of each case." *Amoco Rocmount*,
7 F.3d at 915.  The court should consider "the character of the corporation, its purposes, the kind of
business in which it is engaged, and the situs of its operations." *Gadlin*, 222 F.3d at 799.  This
approach "does not hinge on one particular facet of corporate operations, but on the total activity of
the company considered as a whole." *Amoco Rocmount*, 7 F.3d at 915.

SST provides drilling equipment and operations crews for oil and gas wells.  Its management,

operations, accounting, and engineering functions are located at the Wyoming office.  SST's real property, home office, and maintenance shop are located in Wyoming.  Although SST dispatches its rigs to locations in other states, all requests for equipment are processed by the Wyoming office.  The bulk of its work is conducted in Wyoming.  All employees are paid out of the Wyoming office.

In contrast, one employee with limited responsibilities is located in the Colorado office. Contracts negotiated by the Colorado employee must be approved by the Wyoming office.  Rigs are placed in Colorado only on a temporary basis.

The Sains assert that the doctrine of judicial estoppel bars SST from asserting that its principal place of business is in Wyoming.  The Tenth Circuit has rejected the doctrine of judicial estoppel. *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1330 (10th Cir. 1998).  Moreover, the authority cited by the Sains in support of the judicial estoppel argument holds that judicial estoppel applies only when a judicial body relied on the position taken in the prior proceeding.  *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 731 F.Supp. 747, 749 (E.D. La. 1990). SST's principal place of business was not an issue in the Colorado suit and no judicial body relied on the New Mexico administrative form.  Thus, the doctrine of judicial estoppel is inapplicable.

Considering the total activity of SST as a whole, its principal place of business is Wyoming. Company management, administrative functions, employees, and maintenance facilities are all located in Wyoming.  Company operations originate in Wyoming.  The activities in Wyoming clearly exceed all of the activities in other states.  Under these circumstances, SST is a citizen of Wyoming and Colorado for the purposes of diversity jurisdiction.  In that the Sains are residents of Wyoming, diversity is not complete and this court lacks jurisdiction to address the issues presented on the merits. *Gadlin*, 222 F.3d at 800 (observing that a court lacking jurisdiction cannot render judgment, but must

dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking). Accordingly, this matter will be dismissed for lack of subject matter jurisdiction.

The Sains move to amend the complaint to allege that SST's principal place of business is Colorado.  A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason.  *E.SPIRE Communications, Inc. v. New Mexico Public Regulation Com'n*, 392 F.3d 1204, 1211 (10th Cir. 2004).  The facts of record establish that SST's principal place of business is Wyoming.  In their motion to amend, the Sains allege that SST's principal place of business in Colorado, but they offer no additional facts in support of this conclusory allegation.  The unsupported allegation in the proposed amendment is inconsistent with the record  as discussed herein.  Thus, the motion to amend will be denied because amendment would be futile.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion to Amend Complaint (Doc. 71), filed on August 1, 2005, is **DENIED AS FUTILE.**

**IT IS FURTHER ORDERED** that this matter is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**